UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EXPRESS SCRIPTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV00796 ERW |
| ) | |
| INTEL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Intel Corporation's Motion to Dismiss for Lack of Jurisdiction [doc. #11].

**I.   BACKGROUND FACTS[1]**

This litigation arises out of a dispute between Plaintiff Express Scripts, Inc. ("ESI") and Defendant Intel Corporation ("Intel") concerning ESI's use of, and intent-to-use trademark application for, the name INTELLACT.

ESI is a Missouri corporation operating in the field of pharmacy benefit management, providing pharmaceutical and medical information, as well as related services such as pharmacy benefit consultation and pharmaceutical advice. ESI owns U.S. Trademark Application Serial No. 77/649,295 for the mark INTELLACT for "consulting services regarding healthcare costs and options to improve patients' health; pharmacy services, namely, providing pharmaceutical benefit optimization guidance and advice; retail pharmacy services," for "pharmacy benefit management clinical program to review and analyze lab data, medical data and pharmacy claims;

---

[1] For purposes of Defendant Intel Corporation's Motion to Dismiss, the facts alleged in the Complaint [doc. #1] are taken as true.

pharmaceutical benefit management services," and for "consulting and advice services regarding pharmaceuticals, prescription drugs, medication, healthcare benefits, general health and wellness; pharmacy services, namely, providing pharmaceutical information and alternatives to existing or prescribed medications; provision of pharmaceutical, medication, drug, and healthcare information via telephone, websites on global and other computer networks, and direct mailing; medical counseling in the nature of drug therapy counseling and disease management counseling" (collectively, "the INTELLACT marks"). ESI has been using the INTELLACT marks on and in connection with providing some number of these services since at least February 2009.

In early May 2009, ESI's legal counsel received a letter from Intel concerning the INTELLACT trademark application, stating in relevant part:

> Given Intel's strong presence in the computer industry and the fact that Intel actively provides a wide range of medical and healthcare products and services, Intel believes that your client's use of INTELLACT is likely to deceive or confuse consumers as to the source of your client's products and services, and/or suggest some affiliation or relationship with Intel that does not exist. Furthermore, any use of INTELLACT is likely to dilute the famous INTEL mark under both Federal and state law. Use of the INTELLACT trademark thus constitutes infringement of Intel's established trademark rights and violates Intel's rights under the laws of trademark dilution and unfair competition law. Accordingly, Intel must insist that your client abandon its INTELLACT trademark application.
>
> Please note that our intention is not to disrupt your client's business but to protect Intel's trade name and trademark rights. We are therefore interested in settling this manner in an efficient and amicable manner. If your client is amenable to a name change, Intel is willing to offer a reasonable phase-out period to facilitate the transition to a new name.
>
> Please provide your client's written assurances that they will promptly comply with this request by May 22, 2009. We thank you for your cooperation in this matter and look forward to a timely response.

In response to Intel's letter, ESI filed the present lawsuit on May 22, 2009, seeking a declaratory judgment that (1) ESI's use of INTELLACT in connection with its pharmacy benefit management services does not violate any of Intel's rights in INTEL; (2) ESI's use of INTELLACT in

2

connection with advertising, marketing, selling, offering for sale, and providing pharmacy benefit management-related services does not infringe on or dilute any of Intel's trademark rights to INTEL or constitute unfair competition under the Federal Trademark Act or Missouri common law; (3) there is no likelihood of confusion between ESI's use of INTELLACT in connection with pharmacy benefit management services and Intel's use of INTEL in connection with its business; (4) there is no likelihood that any relevant consumers would be confused, mistaken, or deceived into believing that ESI is affiliated, connected, or otherwise associated with Intel; and (5) ESI's use of INTELLACT in connection with pharmacy benefit management services will not dilute the alleged distinctive quality of Intel's trademark rights to INTEL.

## II. DISCUSSION

Intel contends that this case should be dismissed because (1) its letter to ESI was insufficient to create a case or controversy under Article III, and the Court therefore lacks subject matter jurisdiction; and (2) discretionary dismissal under the Declaratory Judgment Act is warranted, in that entertaining ESI's claim would not serve the policies underlying the Act. ESI argues that there is an immediate, justiciable controversy between the parties, given Intel's allegations in its letter to ESI that use of INTELLACT would constitute trademark infringement, trademark dilution, and unfair competition, coupled with ESI's actual and ongoing use of INTELLACT.

### A. *Subject Matter Jurisdiction*

In the face of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 815 (8th Cir. 2006). The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that "[i]n a case of actual controversy within its jurisdiction . . . any

3

court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought." The definition of "actual controversy" under this statute is co-extensive with Article III's requirement of a case or controversy. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (internal citations omitted). Prior to *MedImmune*, the Federal Circuit employed a two-part case-or-controversy test for declaratory judgment actions in intellectual property cases, requiring the plaintiff to establish both (1) a reasonable apprehension of imminent suit and (2) ongoing or meaningful preparation toward potentially infringing activity. *See, e.g.*, *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007). In *MedImmune*, however, the Supreme Court rejected the reasonable-apprehension-of-suit prong in favor of a broader facts-and-circumstances inquiry: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[2] *Id.* at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)), 132 n.11.

Subsequent decisions of the Federal Circuit applying the *MedImmune* standard have recognized that it makes declaratory judgment jurisdiction much more readily available in disputes concerning intellectual property rights. *See, e.g.*, *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518

---

[2] Although a patent case, courts have found – and there does not appear to be a colorable argument to the contrary – that *MedImmune* is, at the very least, equally applicable to other types of intellectual property disputes. *See Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1243 (10th Cir. 2008) ("[The defendant] offers no persuasive reason why the interpretation of the Declaratory Judgment Act's terms depends on the nature of the intellectual property rights at issue, and nothing in *MedImmune*'s analysis suggests one. Indeed, two of the cases the *MedImmune* Court cited in the process of rejecting the reasonable apprehension of suit test were insurance cases – themselves well outside the intellectual property, much less patent, context.").

F.3d 897, 902 (Fed. Cir. 2008) ("Whether intended or not, the now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases.") (internal citation omitted); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1385 (Fed. Cir. 2007) (Bryson, J., concurring in the result) ("I see no practical stopping point short of allowing declaratory judgment actions in virtually any case in which the recipient of an invitation to take a patent license elects to dispute the need for a license and then to sue the patentee. Although I have reservations about the wisdom of embarking on such a course, I agree with the court that a fair reading of footnote 11 of the Supreme Court's opinion in *MedImmune* compels that result . . . .").

Thus, courts following *MedImmune* have concluded that jurisdiction to enter a declaratory judgment exists where the defendant has taken "a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp.*, 480 F.3d at 138.  As such, although a declaratory judgment plaintiff no longer needs to establish a reasonable apprehension of imminent suit in order to present a justiciable case, doing so remains one possible avenue for demonstrating that an Article III case or controversy exists. *See Prasco, LLC v. Medicis Pharm. Group*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) ("[F]ollowing *MedImmune*, proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy."). Likewise, the second prong of the prior test – requiring the plaintiff to demonstrate that it has taken significant steps toward engaging in arguably infringing activity – remains a significant consideration in determining whether the court has jurisdiction to enter a declaratory judgment. *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008) ("[T]he issue of whether

5

there has been meaningful preparation to conduct potentially infringing activity remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate.") (internal citations omitted).  Additionally, "[a] useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) (internal citation omitted).

Intel argues that there is no actual controversy here because its letter only requested that ESI abandon its intent-to-use application for the INTELLACT marks, and that it therefore at most threatened an opposition before the Patent and Trademark Office ("the PTO").  In connection with the briefing of this Motion, however, ESI has presented evidence indicating that in addition to intending to use INTELLACT, it is in fact currently using the mark in connection with providing certain pharmacy benefit management services.³  Although Intel apparently did not know that ESI was using the INTELLACT mark when it sent its letter, Intel did expressly state that using INTELLACT *would* infringe on its trademark rights ("Use of the INTELLACT trademark . . . constitutes infringement of Intel's established trademark rights and violates Intel's rights under the laws of trademark dilution and unfair competition law.").  Given that ESI claims actual use of INTELLACT as early as February 2009, Intel's letter of April 2009 was sufficient to amount to express charge of infringement, even if Intel did not know at the time that it was making such a charge.  Because ESI knew that it was using INTELLACT when it received Intel's letter, the letter put ESI "in the position of either pursuing arguably illegal behavior or abandoning

---

³ The Court is permitted to consider matters outside the pleadings in evaluating whether subject matter jurisdiction exists.  *See Osborne v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

6

that which [it] claims a right to do," *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007), and there is therefore a controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("If . . . a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction.") (emphasis in original); *SanDisk Corp.*, 480 F.3d at 1381 ("[W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.").

The Court thus concludes that there is subject matter jurisdiction under Article III to entertain ESI's claim for a declaratory judgment. Intel alleged that ESI's use of INTELLACT would constitute infringement of its trademark rights and would violate unfair competition law, and ESI's evidence that it is currently using the INTELLACT mark is sufficient to demonstrate that there is a real and immediate controversy between the parties. Although this situation likely would not have satisfied the Federal Circuit's pre-*MedImmune* test, the Court finds that ESI has made a sufficient showing to satisfy current governing precedent as to Article III's requirements in the declaratory judgment context.

### B.   *Discretionary Dismissal under the Declaratory Judgment Act*

Intel argues that the Court should exercise its discretion under the Declaratory Judgment Act to dismiss ESI's claim because (1) ESI, by filing this action, is attempting to usurp Intel's choice of forum as the true plaintiff; (2) ESI cannot show any adverse effects on its use of the

INTELLACT marks; and (3) allowing this action to go forward would discourage settlement efforts. ESI contends that this declaratory judgment suit is necessary to establish its right to use the mark, because otherwise it is put in the position of abandoning its use or being sued for trademark infringement, trademark dilution, and violation of unfair competition law.

"The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a) (emphasis added), not that it *must* do so." *MedImmune*, 549 U.S. at 136. Indeed, the *MedImmune* court noted that "[t]his text has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* (internal quotations and citations omitted); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."). As such, a court may exercise its discretion to dismiss or stay a declaratory judgment action so long as its decision is consistent with the purposes of the Act and considerations of wise judicial administration. *See Wilton*, 515 U.S. at 287-88.

The policies behind the Act counsel in favor of entertaining an action for declaratory relief "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Alsager v. Dist. Court of Polk County, Iowa (Juvenile Division)*, 518 F.3d 1160, 1163-64 (8th Cir. 1975) (internal citation omitted). In deciding whether to exercise declaratory judgment jurisdiction, courts should also ensure that "the declaratory judgment action is [not] being used merely as a device for procedural fencing – that is,

8

to provide another forum in a race for res judicata." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998 (8th Cir. 2005) (internal quotations and citations omitted).[4]

As in the Court's analysis of whether ESI's claim presents an Article III controversy, the Court finds that ESI's actual, ongoing use of the INTELLACT mark is the principal factor in creating a concrete dispute that warrants resolution by declaratory judgment. Were ESI not currently using the mark, the Court might well agree with Intel that declaratory relief would not serve any purpose for ESI. Because ESI is using it, however, and because Intel specifically alleged in its letter that doing so constitutes infringement and illegal unfair competition, a declaratory ruling on infringement is necessary to clarify ESI's right to use INTELLACT going forward. In short, the Court finds that declaratory relief will "clarify[] and settl[e] the legal relations in issue" and "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *See Alsager*, 518 F.3d at 1163-64.

Furthermore, Intel's arguments in favor of discretionary dismissal are not persuasive. First, the cases cited by Intel in which courts have dismissed declaratory judgment actions as improperly attempting to usurp the true plaintiff's choice of forum and for failing to show an adverse effect on the use of the intellectual property at issue, all involve situations in which a declaratory judgment action *and* an infringement action were pending in different federal courts. *See Internet Transaction Solutions, Inc. v. Intel Corp.*, 2006 WL 1281654, at *2 (S.D. Ohio 2006); *Eveready Battery Co. v. Zinc Prods. Co.*, 21 F. Supp. 2d 1060, 1061-62 (E.D. Mo. 1998);

---

[4] In *Scottsdale*, the Eighth Circuit adopted a six-factor test for discretionary dismissal of declaratory judgment actions where there is no pending state court litigation, consisting of the two factors from *Alsager*, the factor cited above concerning "procedural fencing," and three additional factors that – somewhat confusingly, given that the test is only applicable in the absence of pending state court litigation – address whether it might be preferable to have the issue(s) decided in state court. Due to the absence of any state interest in the resolution of this trademark dispute, the Court declines to apply these latter factors.

9

*Anheuser-Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 419 (8th Cir. 1999). The courts in those cases therefore applied the first-to-file rule to determine in which of two fora the matter would be litigated, not *whether* or *when* it would be litigated, which are ESI's principal concerns given its ongoing use of INTELLACT.

In contrast, Intel has not filed an infringement action in another forum, and its argument is therefore that this action should not proceed at all – not that the proper forum is elsewhere. Intel may file an opposition to ESI's trademark application once it is published, but that would do little to settle this dispute given that Intel could later bring an infringement action even if ESI succeeds in registering the INTELLACT marks. *See, e.g.*, *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 118 (2d Cir. 1999) ("As a general matter, registration creates no substantive trademark rights against infringement beyond the common law rights acquired through use of the mark."); *see also Nat'l Auto. Club v. Nat'l Auto Club, Inc.*, 365 F. Supp. 879, 882 (D.N.Y. 1973) ("While registration of a mark creates a presumption of its validity and is evidence of the exclusive right to its use, it does not assure its protection in an infringement action.") (internal citations omitted). As such, to the extent Intel might argue that the PTO is the "other forum" in which resolution of this matter is appropriate, the Court finds that to the contrary, the registration proceedings, even if opposed, will not offer the clarity and finality sought by ESI in this declaratory judgment action. Likewise, while any adverse effect on the declaratory judgment plaintiff's ability to use a given trademark would be relevant when making an equitable decision as to whether the declaratory judgment suit or the infringement suit should proceed, the Court fails to see how it is an especially pertinent consideration when the other option is outright dismissal.

The Court also does not agree with Intel that discretionary dismissal of this suit would promote informal settlement. While ESI did file this suit on May 22, 2009 (the response deadline

in Intel's letter), and there is of course a general policy of in favor of settlements, ESI is under no obligation to negotiate with Intel if it has concluded that it has the right to use the INTELLACT marks it seeks to register with the PTO. *Cf. Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) (patentee's willingness to continue licensing discussions does not prevent plaintiff from bringing declaratory judgment suit) (citing *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 n.3 (Fed. Cir. 2007)).  The Court sees no reason to dismiss this lawsuit so that the parties can return to the bargaining table and again confirm that this dispute requires judicial resolution.

Thus, the Court concludes that it will not exercise its discretion under the Declaratory Judgment Act to dismiss ESI's claim.  Intel expressly charged – even if unintentionally – that ESI is currently infringing on its trademark rights by using the INTELLACT mark, and a declaratory judgment action is therefore an appropriate means for ESI to clarify and establish its rights with respect to the mark.

### III.    CONCLUSION

Intel's Motion to Dismiss will be denied.  Given ESI's actual and ongoing use of the INTELLACT mark, Intel's assertion in its April 30, 2009 letter that use of the mark would infringe on Intel's trademark rights and constitute unfair competition is sufficient to confer jurisdiction under Article III, and makes discretionary dismissal under the Declaratory Judgment Act unwarranted.  That said, the Court acknowledges that ESI's evidence of actual use of the INTELLACT mark – the principal factor in the Court's conclusions here – is minimal at best, such that the Court will revisit these issues if subsequent discovery refutes ESI's assertions.

Accordingly,

**IT IS HEREBY ORDERED** that Intel Corporation's Motion to Dismiss for Lack of Jurisdiction [doc. #11] is **DENIED**.

Dated this 3rd Day of March, 2010.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE